# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELODY L. SHAW, | : |
|            Plaintiff, | : CIVIL ACTION |
| v. | : |
| KILOLO KIJAKAZI, | : No. 20-cv-02695-RAL |
| Acting Commissioner of Social Security,[1] | : |
|            Defendant. | : |

## MEMORANDUM OPINION

**RICHARD A. LLORET**                                                                         **August 6, 2021**
**U.S. MAGISTRATE JUDGE**

      Melody L. Shaw was denied Social Security benefits by the decision of an Administrative Law Judge ("ALJ"). Ms. Shaw contends that the ALJ erroneously reached an unfavorable decision. Specifically, Ms. Shaw argues that the ALJ failed to assign proper weight to the opinion of a doctor who performed a consultive mental examination. Pl. Br. at 3–11 (Doc. No. 13). The Commissioner of Social Security ("Commissioner") responds that substantial evidence supports the ALJ's determination that Ms. Shaw is ineligible for Social Security benefits. Def. Br. at 7–11 (Doc. No. 14).

      After careful review, I agree with the Commissioner and find that the ALJ's decision was supported by substantial evidence. For the reasons set forth below, I deny Ms. Shaw's request for review and affirm the final decision of the Commissioner.

## PROCEDURAL HISTORY

      On September 8, 2017, Ms. Shaw filed a claim for supplemental security income

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the defendant in this action. No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

("SSI"), alleging a disability beginning on June 30, 2006. Administrative Record ("R") 170. The Social Security Administration ("SSA") denied her claim on January 17, 2018. R. 102.

After this denial, Ms. Shaw requested an administrative hearing before an ALJ. R. 114. The hearing occurred on March 14, 2019, and the ALJ issued a decision denying Ms. Shaw's claim on April 10, 2019. R. 22–34, 41. On April 26, 2019, Ms. Shaw appealed the ALJ's unfavorable decision to the SSA's Appeals Council. R. 4. On April 8, 2020, the Appeals Council denied Ms. Shaw's request for review. R. 1. On June 9, 2020, Ms. Shaw filed this appeal in federal court. Doc. No. 1.

## FACTUAL BACKGROUND

### A.   The claimant's background.

Ms. Shaw was forty-one years old when she applied for SSI, making her a "younger person" under the regulations relevant to her application. R. 33; 20 C.F.R. § 416.963. She completed high school and worked briefly from 2014 to 2015 for a security guard service at various retail stores. R. 49–50, 188.

Ms. Shaw has numerous documented physical ailments. Most notably, she is obese and has received treatment for various kidney and back disorders. R. 278, 379, 422–23. Ms. Shaw has also reported suffering from mental illnesses such as anxiety, depression, and post-traumatic stress disorder ("PTSD"). R. 636. Ms. Shaw applied for SSI in September 2017, alleging disability based on these physical and mental impairments. R. 89–90.

### B.   The ALJ's decision.

On April 10, 2019, the ALJ issued a decision finding that Ms. Shaw was not disabled as defined by the Social Security Act. In reaching this decision, the ALJ made

the following findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation.²

At step one, the ALJ concluded that Ms. Shaw had not engaged in substantial gainful activity ("SGA") since she applied for SSI on September 8, 2017. R. 24.

At step two, the ALJ determined that Ms. Shaw had the following severe impairments: degenerative disc disease, obesity, depressive- and anxiety-related disorders, and PTSD. R. 24. The ALJ additionally found that Ms. Shaw had several non-severe impairments, including various kidney issues, atherosclerotic disease, microcytic anemia, toe pain, and hypertension. R. 24–25. The ALJ noted that Ms. Shaw's undiagnosed shoulder problems, leg and knee pain, and psychotic symptoms were not medically determinable impairments. R. 25–26.

At step three, the ALJ compared Ms. Shaw's severe impediments to those contained in the Social Security Listing of Impairments (the "Listing").³ R. 26–28. The ALJ found that Ms. Shaw's back ailment did not equal the criteria under Listing 1.04 (Disorders of the Spine). R. 26. Regarding Ms. Shaw's mental impairments, the ALJ determined that Ms. Shaw only had mild or moderate limitations in the four "paragraph

---

² An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of her past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration her residual functional capacity, age, education, and work experience. *See* 20 C.F.R. § 416.920(a)(4)(i)–(v).

³ The regulations contain a series of "Listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work she may have performed in the past. *Id.*

B criteria."[4] R. 26–28. Therefore, Ms. Shaw's conditions did not meet one or more of the requirements under Listings 12.04 (Depressive, Bipolar, and Related Disorders), 12.06 (Anxiety and Obsessive-Compulsive Disorders), or 12.15 (Trauma- and Stressor-Related Disorders). *Id.*

At step four, the ALJ assessed Ms. Shaw's residual functional capacity ("RFC"), or "the most [Ms. Shaw] can still do despite [her] limitations." 20 C.F.R. § 416.945. After a review of the objective medical evidence and the subjective medical opinion evidence, the ALJ concluded that Ms. Shaw retained the ability to perform light work,[5] subject to certain limitations. R. 28–33. These limitations included:

> [O]ccasional stooping, crouching, kneeling, and climbing ramps and stairs; no crawling or climbing ladders, ropes, or scaffolds; occasional exposure to extreme cold or wetness; the work should involve simple routine tasks, simple judgment and decision making; it should involve no contact with the general public and occasional interaction with coworkers and supervisors.

R. 28. Because Ms. Shaw had not performed any relevant work immediately prior to her claim, the ALJ found that she could perform tasks for an employer if they fit within the parameters of her RFC. R. 33.

At step five, the ALJ relied on the advice of a vocational expert. The expert identified three jobs that Ms. Shaw could perform considering her age, education, work

---

[4] The Listing outlines four functional criteria ("paragraph B criteria") to assess how a claimant's mental disorder limits his/her functioning: ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E). In order to satisfy the requirements for a mental impairment in the Listing, the claimant must have either an extreme limitation in one of these categories or a marked limitation in two of them. *Id.* at § 12.00(F).

[5] As defined by the regulations, light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

experience, and RFC: mail sorter, sorter, and tagger. R. 33–34. Because the ALJ found jobs that Ms. Shaw could perform despite her limitations, the ALJ ruled that Ms. Shaw was "not disabled." R. 34.

## DISCUSSION

### A.     The standard of review.

My review of the ALJ's decision is deferential; I am bound by her findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining whether substantial evidence supports the ALJ's decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's decision is supported by substantial evidence, her disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Evidence is substantial where it consists of "more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to "plenary review." *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 759 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 455, 447 (3d Cir. 1983)).

### B.  The ALJ supported her RFC determination with substantial evidence and therefore did not err in denying Ms. Shaw's claim.

Ms. Shaw's appeal focuses on the medical opinion of Dr. Kevin Hoffman, Psy.D. Ms. Shaw claims the ALJ erred by failing to properly weigh Dr. Hoffman's medical opinion of Ms. Shaw's mental impairments. Pl. Br. at 3. The Commissioner responds that the ALJ properly evaluated Dr. Hoffman's opinion in light of other evidence in the record. Def. Br. at 5. I find that the ALJ's decision was supported by substantial evidence and will deny this claim.

In January 2017, the SSA revised its regulations governing how an ALJ evaluates medical opinion evidence for claims filed on or after March 27, 2017.[6] *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017); *see also* 20 C.F.R. § 416.920c. Under the new rules, an ALJ is not required to "defer or give any specific evidentiary weight . . . to any medical opinion(s)." 20 C.F.R. § 416.920c(a). Instead, the ALJ must articulate the persuasiveness of the medical

---

[6] The Commissioner contends that case law interpreting the old SSA regulations regarding the weight of medical evidence "must yield" to the "unambiguous terms" of the current SSA regulations. Def. Br. at 10–11. Because the ALJ's findings in this case are supported by ample evidentiary material, I decline to address this issue at this time.

6

opinions and administrative findings "together in a single analysis." *Id.* §§ 416.920c(b), 416.920c(b)(1). This standard does not, however, require an ALJ to explain all factors considered for each individual medical opinion. *Id.* § 416.920c(b)(1).

The regulations stipulate that supportability and consistency are "the most important factors" in an ALJ's determination of the persuasiveness of a medical source's opinion. *Id.* § 416.920c(b)(2). Regarding supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2). The regulations also instruct an ALJ to consider the physician's relationship with a claimant, including the length of the treating relationship, the frequency of the claimant's visits, and the kinds and extent of examinations the medical source performed. *Id.* § 416.920c(c)(3). An ALJ may also evaluate other factors, such as "whether new evidence [added to the patient's record] after the medical source made his or her medical opinion . . . makes the medical opinion . . . more or less persuasive." *Id.* § 416.920c(c)(5).

On January 12, 2018, four months after Ms. Shaw filed her SSI claim, Dr. Hoffman conducted a consulting examination of her mental impairments. R. 572. Following this visit, Ms. Shaw obtained further mental health counseling through the Consortium, a nonprofit community mental health center, during much of 2018 and early 2019. *See* R. 620–80. After evaluating Ms. Shaw, Dr. Hoffman concluded that she

7

had marked limitations in her ability to: understand, remember, and carry out complex instructions; make complex work-related decisions; interact appropriately with the public, supervisors, and coworkers; and respond appropriately to usual work situations and changes in a routine work setting. R. 577–78. Dr. Hoffman also assessed that Ms. Shaw had moderate limitations in her abilities to understand, remember, carry out simple instructions, and make simple work-related decisions. R. 577. The ALJ did not find Dr. Hoffman's opinion persuasive and concluded that his findings were not consistent with or supported by the totality of the medical record. R. 32.

      I find that the ALJ adequately explained why she found Dr. Hoffman's opinion less persuasive than other record evidence. The ALJ first reviewed Ms. Shaw's statements at the administrative hearing. Ms. Shaw mentioned that her anxiety and PTSD had worsened over the years and described her "tendency to lash out if someone is looking at her the wrong way." R. 28–29 (ALJ's decision); R. 50–52, 60–61, 71–73 (administrative hearing transcript). These statements largely mirror those in Dr. Hoffman's report. *See* R. 573–74. Although the ALJ acknowledged that Ms. Shaw's impairments "could reasonably be expected to cause" some of the symptoms Ms. Shaw alleged at the hearing, the ALJ found the statements about the "intensity, persistence and limiting effects of these symptoms" to be inconsistent with much of the evidentiary record. R. 29.

      Next, the ALJ reviewed treatment notes from Ms. Shaw's formal outpatient psychiatric visits that began after her consultation with Dr. Hoffman. R. 29–31. The ALJ identified that, despite the symptoms Ms. Shaw reported, medical professionals at the Consortium noted in May 2018 that Ms. Shaw "presented with adequate frustration tolerance, a normal attention span, appropriate thought content, and normal judgment

8

and insight." R. 30; *see also* R. 638–39. The ALJ also pointed to the opinion of therapist Jermaine Wright, who concluded in January 2019 that Ms. Shaw had "normal perceptions, a normal thought process, and intact memory" and was "able to form logical associations." R. 31; *see also* R. 660, 670–71.

The ALJ then described the evaluations of the state agency's psychological consultant, Dr. Richard W. Williams, Ph.D. Upon reviewing the medical evidence in the administrative record, Dr. Williams concluded that the data did not "establish a severity level of mental impairment that would prohibit at least simple, routine tasks." R. 31; *see also* R. 101. When assessing Dr. Hoffman's notes in the context of Ms. Shaw's statements at the administrative hearing, her medical records, and Dr. Williams' opinion, the ALJ concluded that "[t]he severity of Dr. Hoffman's ratings" was inconsistent with the totality of the other record evidence. R. 30–32. By walking through this analysis, the ALJ "truly considered competing evidence" and did not overlook medical opinions that supported a favorable outcome for Ms. Shaw. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009). The ALJ therefore did not "reject evidence for no reason or for the wrong reason."[7] *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (1999)). She evaluated conflicting evidence and concluded that Dr. Hoffman's opinion was less persuasive, as the SSA regulations instruct her to do. *See* 20 C.F.R. § 416.920c(a)–(b).

---

[7] Ms. Shaw's reply brief submits that the ALJ improperly disregarded Dr. Hoffman's opinion because it was on a check box form. Pl. Reply Br. at 2–3 (Doc. No. 15). Ms. Shaw notes that the Commissioner's brief pointed out that Dr. Hoffman used a checkbox form; however, the ALJ's opinion does not indicate that she found Dr. Hoffman's opinion less persuasive because he used a checkbox form. Indeed, as discussed throughout this section, the ALJ found Dr. Hoffman's opinion less persuasive because of other record evidence and the inconsistencies in that opinion—not because Dr. Hoffman used a checkbox form.

9

I likewise find that substantial evidence supported the ALJ's decision. The ALJ explained that during the consultation with Dr. Hoffman, Ms. Shaw "alleged a multitude of symptoms that are not ultimately found in treating source records." R. 32. The totality of the administrative record supports this assertion. For example, Ms. Shaw told Dr. Hoffman that she had been seeing demons and angels. R. 573. However, on at least three separate occasions after that visit, the mental health professionals at the Consortium indicated that Ms. Shaw had "normal" perception and was not suffering from hallucinations or illusions. R. 639, 651, 671. Ms. Shaw also reported to Dr. Hoffman that she suffered from debilitating panic attacks twice every day. R. 573. As the ALJ noted, however, the treating source records from the Consortium do not suggest any symptoms relating to panic attacks. R. 620–80. The mental health symptoms Ms. Shaw reported to Dr. Hoffman were clearly inconsistent with those she reported during other medical visits. The ALJ was entitled to use these inconsistencies to find that Dr. Hoffman's opinion was not persuasive.

The ALJ's finding of limited persuasiveness was further supported by inconsistencies in Dr. Hoffman's examination notes. Dr. Hoffman indicated that Ms. Shaw's thought processes were "coherent and goal directed" and that her attention and concentration were "intact." R. 574–75. As the ALJ noted, this assessment is inconsistent with the notable limitations Dr. Hoffman imposed. R. 32. The inconsistencies between Dr. Hoffman's exam notes and the limitations he imposed provide further support for the ALJ's decision.

Ms. Shaw's brief cites to record material from treatment notes at the Consortium that she argues supports a different conclusion. Pl. Br. at 6–9. These treatment notes indicated that Ms. Shaw was stressed by family situations and occasionally observed to

10

have a frustrated or tearful affect. *See, e.g.*, R. 634, 655, 666. Ms. Shaw adds in her reply brief that upholding the ALJ's decision would amount to "turn[ing] a blind eye to the mountains of remarkable findings throughout the whole record." Pl. Reply Br. at 4. Setting aside Ms. Shaw's failure to define what constitutes a "remarkable finding," the Commissioner notes that the mere existence of record evidence supporting a contrary ruling does not allow me to overturn the ALJ's decision on federal review. Def. Br. at 10; *Malloy*, 306 F. App'x at 764. I agree. Because the ALJ's finding of fact was supported by substantial record evidence, I am bound by her factual conclusions notwithstanding the existence of record evidence that may favor Ms. Shaw's position. *See Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

Ms. Shaw submits that the ALJ "subordinated" Dr. Hoffman's findings to those of Dr. Williams—a non-examining medical consultant—because Ms. Shaw's relationship with Dr. Hoffman was only a one-time consultation. Pl. Br. at 5. As previously explained, the ALJ is required to assign varying degrees of weight to different medical opinions based on their persuasiveness. *See* 20 C.F.R. §§ 416.920c(a), 416.920c(b)(1). Dr. Williams reviewed Dr. Hoffman's assertions, as well as other evidence in the record, and explained his reasons for reaching different conclusions than Dr. Hoffman. R. 100–01. And, as already explained, the ALJ adequately explained why she found that Dr. Hoffman's opinion was not persuasive. Because substantial evidence supported the ALJ's determination of each doctor's persuasiveness, I will defer to the ALJ's evaluation of the conflicting medical opinions. *Diaz*, 577 F.3d at 506.

Ms. Shaw also contends that the ALJ improperly rejected Dr. Hoffman's opinion for being largely based on Ms. Shaw's self-reported limitations. Pl. Br. at 9–10. When evaluating medical evidence, an ALJ must "give serious consideration to a claimant's

11

subjective complaints of pain." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). But, an ALJ may determine that a claimant's subjective reports of pain and other symptoms are not credible upon consideration of all the evidence. *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999); *see also Roderick v. Comm'r of Soc. Sec.*, 322 F. App'x 117, 121 (3d Cir. 2009) (finding that a primary care physician's diagnosis of depression based entirely on self-reports was not credible when compared with an examining psychologist's objective findings).

As previously explained, the ALJ weighed the symptoms Ms. Shaw reported to Dr. Hoffman and found that some symptoms were inconsistent with the other record evidence. But, the ALJ also found that other symptoms were consistent with record evidence and imposed corresponding limitations on Ms. Shaw's RFC. The ALJ indicated that Ms. Shaw's potential employment should involve "no contact with the general public and occasional interaction with coworkers and supervisors." R. 28. This condition accounts for two self-reported symptoms—irritability and social withdrawal—that were supported by subjective and objective evidence from other medical visits. *See* R. 573 (Dr. Hoffman's report); R. 655, 666, 670–71 (treatment records from the Consortium demonstrating irritability and social withdrawal). Therefore, the ALJ did consider Ms. Shaw's self-reported limitations and gave credence to the limitations supported by the record.

In her reply brief, Ms. Shaw claims that mental health professionals are justified in basing medical opinions off subjective patient reports. Pl. Reply Br. at 3–4. However, the non-binding case law she cites to states that "reliance on subjective reports, *without more*, is not a legitimate reason" for discounting a medical opinion. *Gallant v. Saul*, 783 F. App'x 688, 691 (9th Cir. 2019) (emphasis added). The next sentence of *Gallant* says

12

that "reliance on a claimant's subjective reports can be a legitimate basis for discrediting the practitioner's opinions if the ALJ also provides legally sufficient reasons to discredit the claimant's testimony." *Id.* Here, as already explained, the ALJ discounted Dr. Hoffman's opinion largely due to inconsistencies with other record evidence. By asking me to assign greater weight to her self-reports via Dr. Hoffman's opinion, Ms. Shaw proposes a reexamination of the ALJ's credibility determinations. It is outside my scope of review to weigh the medical evidence and substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Because the ALJ's decision was reasonably supported by substantial evidence, I will uphold her decision and deny Ms. Shaw's claim for relief.

## CONCLUSION

Based on the discussion above, I find that Ms. Shaw is not entitled to relief. The ALJ properly addressed Dr. Hoffman's medical opinion and cited appropriate record evidence to support her finding that Dr. Hoffman's opinion was not persuasive. Therefore, her opinion was supported by substantial evidence and permits "meaningful judicial review." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). Consequently, I will deny Ms. Shaw's request for review of her claim for Social Security benefits.

                                                                **BY THE COURT:**

                                                              *s/Richard A. Lloret*
                                                             **RICHARD A. LLORET**
                                                             **U.S. MAGISTRATE JUDGE**